UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 22-cv-6307 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| VMWARE, INC., NICOLE ANASENES, | : **SECURITIES EXCHANGE ACT OF** |
| ANTHONY BATES, MARIANNE BROWN, | : **1934** |
| MICHAEL BROWN, MICHAEL DELL, | : |
| KENNETH DENMAN, EGON DURBAN, | : **JURY TRIAL DEMANDED** |
| KAREN DYKSTRA, RAGHU RAGHURAM, | : |
| and PAUL SAGAN, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against VMware, Inc., ("VMware or the "Company") the members VMware's board of directors (the "Board" or the "Individual Defendants"), and Broadcom Inc. and affiliates ("Broadcom" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between VMware and Broadcom.

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on July 15, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Verona Merger Sub, Inc., a wholly owned subsidiary of Verona Holdco, Inc. ("Holdco"), which in turn is a direct wholly owned subsidiary of VMware, will merge with and into VMware, ("Merger Sub 1"), will merge with and into VMware with VMware surviving as a wholly owned subsidiary of Holdco and converted into a Delaware limited liability company; following the conversion, Barcelona Merger Sub 2 ("Merger Sub 2"), a direct wholly owned subsidiary of Broadcom, will merge with and into Holdco, with Holdco surviving this merger and becoming a wholly owned subsidiary of Broadcom, and then will merge with and into Barcelona Merger Sub 3, LLC ("Merger Sub 3"), a direct wholly owned subsidiary of Broadcom, with Merger Sub 3 surviving as a wholly owned subsidiary of Broadcom (collectively, the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on May 26, 2022 (the "Merger Agreement"), each VMware stockholder will receive (i) $142.50 in cash or (ii) 0.25200 shares of Broadcom common stock (the "Merger Consideration"). Following the consummation of the Proposed Transaction, Company shareholders will own 12.6% of Broadcom common stock outstanding and Broadcom shareholders will own 87.4% of Broadcom common stock.

3. As discussed below, Defendants have asked VMware's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors,

Goldman Sachs & Co. LLC ("Goldman Sachs") and J.P. Morgan Securities LLC ("J.P. Morgan") in support of their fairness opinions.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to VMware's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company's stock trades on the New York Stock Exchange, headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of VMware stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Nicole Anasenes has served as a member of the Board since April 2022.

11. Individual Defendant Marianne Brown has served as a member of the Board since October 2019.

12. Individual Defendant Michael Brown has served as a member of the Board since April 2007.

13. Individual Defendant Michael Dell has served as a member of the Board since September 7, 2016 and is the Chairman of the Board.

14. Individual Defendant Kenneth Denman has served as a member of the Board since January 2021.

15. Individual Defendant Egon Durban has served as a member of the Board since September 7, 2016.

16. Individual Defendant Karen Dykstra has served as a member of the Board since March 2016.

17. Individual Defendant Raghu Raghuram has served as a member of the Board since June 1, 2021 and is the Company's Chief Executive Officer.

18. Individual Defendant Paul Sagan has served as a member of the Board since April 2014.

19. Defendant VMware is a Delaware corporation and maintains its principal offices at 3401 Hillview Avenue, Palo Alto, California 94304. The Company's stock trades on the New York Stock Exchange under the symbol "VMW."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    The Proposed Transaction**

22. VMware provides software solutions in the areas of modern applications, cloud management and infrastructure, networking, security, and digital workspaces in the United States and internationally. It offers VMware multi-cloud solutions, including VMware vSphere, a data center infrastructure that provides the fundamental compute layer; vSAN and VxRail, which offers holistic data storage and protection options to applications running on vSphere; and vRealize Cloud Management solutions that manages hybrid and multi-cloud environments running in virtual machines and containers, as well as VMware Cloud Foundation, a cloud platform that combines its vSphere, vSAN, and NSX with vRealize Cloud Management into an integrated stack and delivers enterprise-ready cloud infrastructure for private and public clouds. The Company also provides networking solutions, such as VMware NSX, NSX Distributed and Gateway Firewalls, NSX Network Detection and Response Engine, NSX Advanced Load Balancer, Tanzu Service Mesh, and VMware SASE; security solutions consisting of VMware Carbon Black Endpoint, Workload, and Container; and digital workspace solutions comprising Workspace ONE Unified Endpoint Management, Access, Intelligent Hub, and Horizon. In addition, it offers application modernization solutions, such as Tanzu Application and Operations Platform, Tanzu Application Service Platform, Tanzu Observability, Tanzu Community Edition, and Tanzu Labs; and cloud management solutions, including vRealize Cloud Management, vCloud Suite, and CloudHealth by VMware Suite. The Company sells its products through distributors, resellers, system vendors,

5

and systems integrators. VMware has a strategic alliance with Amazon Web Services to build and deliver an integrated hybrid solution. The Company was incorporated in 1998 and is headquartered in Palo Alto, California.

23. On May 26, 2022, the Company and Broadcom jointly announced the Proposed Transaction:

> SAN JOSE and PALO ALTO, Calif., May 26, 2022 /PRNewswire/ -- Broadcom Inc. (NASDAQ: AVGO), a global technology leader that designs, develops and supplies semiconductor and infrastructure software solutions, and VMware, Inc. (NYSE: VMW), a leading innovator in enterprise software, today announced an agreement under which Broadcom will acquire all of the outstanding shares of VMware in a cash-and-stock transaction that values VMware at approximately $61 billion, based on the closing price of Broadcom common stock on May 25, 2022. In addition, Broadcom will assume $8 billion of VMware net debt.
>
> VMware, a leading provider of multi-cloud services for all apps, pioneered virtualization technology, an innovation that positively transformed x86 server-based computing. VMware then created the software-defined data center and played a leading role in virtualizing networking and storage, before evolving to become a hybrid cloud and digital workspace leader. Today, VMware's multi-cloud portfolio, spanning application modernization, cloud management, cloud infrastructure, networking, security and anywhere workspaces, forms a flexible, consistent digital foundation on which the largest and most dynamic enterprises across industries build, run, manage, connect and protect their most important and complex workloads for the benefit of their customers.
>
> Following the closing of the transaction, the Broadcom Software Group will rebrand and operate as VMware, incorporating Broadcom's existing infrastructure and security software solutions as part of an expanded VMware portfolio.
>
> By bringing together the complementary Broadcom Software portfolio with the leading VMware platform, the combined company will provide enterprise customers an expanded platform of critical infrastructure solutions to accelerate innovation and address the most complex information technology infrastructure needs. The combined solutions will enable customers, including leaders in all industry verticals, greater choice and flexibility to build, run, manage, connect and protect applications at scale across diversified, distributed environments, regardless of where they run:

from the data center, to any cloud and to edge-computing. With the combined company's shared focus on technology innovation and significant research and development expenditures, Broadcom will deliver compelling benefits for customers and partners.

Hock Tan, President and Chief Executive Officer of Broadcom, said, "Building upon our proven track record of successful M&A, this transaction combines our leading semiconductor and infrastructure software businesses with an iconic pioneer and innovator in enterprise software as we reimagine what we can deliver to customers as a leading infrastructure technology company. We look forward to VMware's talented team joining Broadcom, further cultivating a shared culture of innovation and driving even greater value for our combined stakeholders, including both sets of shareholders."

Raghu Raghuram, Chief Executive Officer of VMware, said, "VMware has been reshaping the IT landscape for the past 24 years, helping our customers become digital businesses. We stand for innovation and unwavering support of our customers and their most important business operations and now we are extending our commitment to exceptional service and innovation by becoming the new software platform for Broadcom. Combining our assets and talented team with Broadcom's existing enterprise software portfolio, all housed under the VMware brand, creates a remarkable enterprise software player. Collectively, we will deliver even more choice, value and innovation to customers, enabling them to thrive in this increasingly complex multi-cloud era."

Tom Krause, President of the Broadcom Software Group, said, "VMware has long been recognized for its enterprise software leadership, and through this transaction we will provide customers worldwide with the next generation of infrastructure software. VMware's platform and Broadcom's infrastructure software solutions address different but important enterprise needs, and the combined company will be able to serve them more effectively and securely. We have deep respect for VMware's customer focus and innovation track record, and look forward to bringing together our two organizations."

Michael Dell, Chairman of the VMware Board, said, "Together with Broadcom, VMware will be even better positioned to deliver valuable, innovative solutions to even more of the world's largest enterprises. This is a landmark moment for VMware and provides our shareholders and employees with the opportunity to participate in meaningful upside."

The transaction is expected to add approximately $8.5 billion of pro forma EBITDA from the acquisition within three years post-closing.

Pro forma for each company's fiscal year 2021, software revenue is expected to account for approximately 49% of total Broadcom revenue.

**Transaction Details and Path to Completion**

Under the terms of the agreement, which has been unanimously approved by the boards of directors of both companies, VMware shareholders will elect to receive either $142.50 in cash or 0.2520 shares of Broadcom common stock for each VMware share. The shareholder election will be subject to proration, resulting in approximately 50% of VMware's shares being exchanged for cash consideration and 50% being exchanged for Broadcom common stock. Based on the closing price of Broadcom common stock on May 25, 2022, the total $138.23 per-share consideration represents a 44% premium to the closing price of VMware common stock on May 20, 2022, the last trading day prior to media speculation regarding a potential transaction, and a 32% premium to VMware's unaffected 30-day volume weighted average price (VWAP). Upon closing of the transaction, based on the outstanding shares of each company as of the date hereof, current Broadcom shareholders will own approximately 88% and current VMware shareholders will own approximately 12% of the combined company on a fully diluted basis.

Michael Dell and Silver Lake, which own 40.2% and 10% of VMware shares outstanding, respectively, have signed support agreements to vote in favor of the transaction, so long as the VMware Board continues to recommend the proposed transaction with Broadcom.

In connection with the transaction, Broadcom obtained commitments from a consortium of banks for $32 billion in new, fully committed debt financing.

Broadcom expects to maintain its current dividend policy of delivering 50% of its prior fiscal year free cash flow to shareholders. Broadcom expects to maintain an investment grade rating, given its strong cash flow generation and intention to rapidly de-lever.

The transaction, which is expected to be completed in Broadcom's fiscal year 2023, is subject to the receipt of regulatory approvals and other customary closing conditions, including approval by VMware shareholders.

The merger agreement provides for a "go-shop" provision under which VMware and its Board of Directors may actively solicit, receive, evaluate and potentially enter negotiations with parties that offer alternative proposals during a 40-day period following the execution date of the definitive agreement, expiring at 11:59 p.m.

Pacific Time on July 5, 2022. There can be no assurance this process will result in a superior proposal. VMware does not intend to disclose developments about this process unless and until its Board of Directors has made a decision with respect to any potential superior proposal.

**Broadcom Second Quarter 2022 Results and Third Quarter Fiscal Year 2022 Business Outlook**
In a separate press release issued today, Broadcom reported results for its second quarter of fiscal year 2022, ended May 1, 2022, and provided guidance for the third quarter of its fiscal year 2022.

The Broadcom Board of Directors also has authorized a new share repurchase program to repurchase up to $10 billion of its common stock through December 31, 2023. This new share repurchase authorization is in addition to the share repurchase program authorized in December 2021, under which Broadcom may repurchase the current remaining $3 billion of common stock through December 31, 2022. Repurchases under the new share repurchase authorization may be made through a variety of methods, including open market or privately negotiated purchases. The timing and amount of shares repurchased will depend on the stock price, business and market conditions, corporate and regulatory requirements, alternative investment opportunities, acquisition opportunities and other factors. Broadcom is not obligated to repurchase any specific amount of shares of common stock, and the share repurchase program may be suspended or terminated at any time.

**Advisors**
Barclays Capital Inc., BofA Securities, Inc., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Morgan Stanley & Co. LLC and Wells Fargo Securities, LLC are serving as financial advisors to Broadcom. Wachtell, Lipton, Rosen & Katz and O'Melveny & Myers LLP are serving as legal counsel to Broadcom, and Cleary Gottlieb Steen & Hamilton LLP is serving as regulatory counsel.

Goldman Sachs & Co. LLC and J.P. Morgan Securities LLC are serving as financial advisors to VMware, and Gibson, Dunn & Crutcher LLP is serving as legal counsel.

\* \* \*

24. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that VMware's stockholders are provided with the material information that has been

omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Registration Statement**

25.    On July 15, 2022, VMware and Broadcom jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26.    The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the financial advisors in their analyses. The Registration Statement discloses management-prepared or management-approved financial projections for the Company and Broadcom which are materially misleading. The Registration Statement indicates that in connection with the rendering of their fairness opinion, that the management of Broadcom and VMware prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably

among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Company Projections and the VMware-Approved Broadcom Financial Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2027: Non-GAAP Operating Income, Adjusted EBITDA, Unlevered Free Cash Flow, and Unlevered Free Cash Flow (Less Stock-Based Compensation Expenses), but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its

11

usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

30. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for VMware*

31. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the range of illustrative present values of the Company; (ii) the inputs and assumptions underlying the range of illustrative perpetuity growth rates ranging from 2.0% to 3.0%; (iii) the inputs and assumptions underlying the discount rates ranging from 7.5% to 8.5% for VMware; (iv) the Company's weighted average cost of capital; (v) the amount of fully diluted number of shares of Company common stock; and (vi) the total debt and VMware's cash and cash equivalents of the Company as of April 29, 2022.

32. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the range of forward EV/UFCF multiples of 12.0x to 16.0x; (ii) the total debt and VMware's cash and cash equivalents of the Company as of January 31, 2023, 2024, and 2025; (iii) the amount of fully diluted number of shares of Company common stock as of January 31, 2023, 2024, and 2025; (iv) the inputs and assumptions underlying the discount rate of 8.5%.

33. With respect to Goldman Sachs' *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the metrics of the selected comparable transactions selected by Goldman Sachs for the analysis.

34. With respect to Goldman Sachs' *Premia Paid Analysis*, the Registration Statement fails to disclose the transactions selected by Goldman Sachs and the premium paid for each target company in the transactions selected.

35. With respect to Goldman Sachs' *Selected Public Company Comparables* analysis, the Registration Statement fails to disclose the metrics of the selected comparable companies selected by Goldman Sachs for the analysis.

36. With respect to J.P. Morgan's *Public Trading Multiples* analysis for the Company and Broadcom, the Registration Statement fails to disclose the metrics and the multiples of the selected comparable companies selected by J.P. Morgan for the analysis.

37. With respect to J.P. Morgan's *Selected Transaction Multiples Analysis* for the Company and Broadcom, the Registration Statement fails to disclose the metrics and the multiples of the selected comparable transactions selected by J.P. Morgan for the analysis.

38. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* for the Company, the Registration Statement fails to disclose: (i) the range of terminal values of the Company; (ii) the inputs and assumptions underlying the discount rates ranging from 7.5% to 8.5% for VMware; (iii) the Company's weighted average cost of capital; (iv) the amount of fully diluted number of shares of Company common stock; and (v) the net debt balance of the Company.

39. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* for Broadcom, the Registration Statement fails to disclose: (i) the range of terminal values of Broadcom; (ii) the inputs and assumptions underlying the discount rates ranging from 8.0% to 9.0% for Broadcom; (iii)

Broadcom's weighted average cost of capital; (iv) the amount of fully diluted number of shares of Broadcom common stock; and (v) the net debt balance of Broadcom.

40. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things,

the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

44. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

45. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

46. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of VMware within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of VMware, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of VMware, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of VMware, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

51. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.  Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 25, 2022               **MELWANI & CHAN LLP**

By: _/s/ Gloria Kui Melwani_
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*